COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Bumgardner and Felton
Argued at Salem, Virginia


GRAYSON (COUNTY OF) SCHOOL BOARD AND
 REPUBLIC FRANKLIN INSURANCE COMPANY
                                            OPINION BY
v.    Record No. 0847-02-3          JUDGE WALTER S. FELTON, JR.
                                         NOVEMBER 26, 2002
DORIS GAYE CORNETT


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Kevin T. Streit (Midkiff, Muncie & Ross,
               P.C., on briefs), for appellants.

               D. Edward Wise, Jr. (Arrington, Schelin &
               Herrell, P.C., on brief), for appellee.


     The Grayson County School Board ("employer") appeals a

decision of the Workers' Compensation Commission awarding

benefits to Doris Cornett for an ankle injury she sustained from

a fall as she disembarked from her school bus.  The employer

contends that the commission erred in finding that Cornett

sustained an injury by accident from her employment and provided

credible evidence of her account of the accident.  We affirm the

commission's decision.

## I.  BACKGROUND

     On appeal, "[d]ecisions of the commission as to questions

of fact, if supported by credible evidence, are conclusive and

binding on this Court."  Manassas Ice & Fuel Co. v. Federated

Mutual Ins. Co., 13 Va. App. 227, 229, 409 S.E.2d 824, 826

(1991).  However, "[t]his Court is not bound by the legal
determinations made by the commission."  Robinson v. Salvation
Army, 20 Va. App. 570, 572, 459 S.E.2d 103, 104 (1995).  "The
fact that contrary evidence may be found in the record is of no
consequence if credible evidence supports the commission's
finding."  Manassas Ice, 13 Va. App. at 229, 409 S.E.2d at 826.
We view the evidence in the light most favorable to the
prevailing party below.  Creedle Sales Co. v. Edmonds, 24
Va. App. 24, 26, 480 S.E.2d 123, 124 (1997).

## A.  THE INJURIES

Doris Cornett was employed by the Grayson County School
Board as a bus driver.  She had been employed in this capacity
since 1990.  On the afternoon of July 26, 1999, Cornett finished
her bus route and parked the school bus in her yard, as was
standard practice.  She gathered her belongings and began to
exit the bus.  As she descended the second step, she slipped,
fell, and landed outside the bus with her leg underneath her.

Upon impact, Cornett heard a pop and "knew [her ankle] was
broke[n]."  She was able to move her leg from underneath her,
but was unable to get up.  As a result, Cornett remained on the
ground for approximately twenty minutes, until her husband
arrived home and found her.  When her husband arrived home, he
assisted her into the car and drove her to Dr. Edward Dannelly's
office.  En route to the doctor's office, Cornett spotted her
supervisor, flagged him down, and informed him of the accident.

At Dr. Dannelly's office, Cornett was examined. The initial patient history was brief. It stated, "This is a 35 year old who stepped off a school bus after she got home. She drives a school bus at work. Turned her ankle. Had severe pain and a pop." Cornett also complained of knee pain. Dr. Dannelly diagnosed a "Grade II-III lateral ligament injury, lateral ligament sprain left ankle." Cornett began physical therapy, but continually complained about having pain in her ankle and knee.

On August 27, 1999, Cornett was diagnosed with a mid-calf popliteal tibialis clot in her left leg, for which she was hospitalized. She subsequently began treatment with Dr. Handy as well. On September 7, 1999, Dr. Handy examined Cornett. He noted that "[s]he was stepping off a school bus and she twisted her left ankle and had a Grade IV sprain in her left ankle." He also noted the deep vein thrombophlebitis ("DVT") from the clot that was diagnosed on August 27, 1999.

On October 4, 1999, a bone scan of the left ankle revealed a fracture of the medial talus. At no time subsequent to her accident did Cornett's employer offer her a panel of physicians.

B. PROCEDURAL HISTORY

On October 12, 1999, Cornett filed a claim with the Workers' Compensation Commission seeking temporary total disability benefits for injuries she sustained on July 26, 1999.

On June 14, 2000, the employer deposed Cornett regarding the accident.  The following colloquy ensued:

Q  [Employer's attorney]:  What time of the day was [the accident]?

A  [Cornett]:  Right around four o'clock.

Q:  Where were you?

A:  I was in the bus.

Q:  What were you doing?

A:  I was getting ready to get off.  Is that what you mean?  I was in my yard where I always back.  I was in my parking area where I always park at home.

Q:  Had you parked the bus?

A:  Yes.

Q:  Tell me what happened.

A:  I parked the bus and went and gathered up my stuff, went to go out, you know, go down the steps and made it down the first one fine, went to step down the second one, I just fell.

Q:  There are only two steps?

A:  No.

Q:  How many are there?

A:  Four, I think.

Q:  How long had you been driving this particular bus?

A:  A little less than six weeks.[1]

---

[1] Cornett drove three different buses during the course of her employment.  The first two were Thomas bodystyle buses.  She was driving the new Bluebird bodystyle bus when her accident occurred.

- 4 -

Q: Was there anything different about this bus than the bus you were used to?

A: Yes, the steps on it are different.

Q: How are they different?

A: They are angled and they were just different than the one I was used to. The height I think was different. They are not like normal steps on the bus. The school bus steps are different than like say our home steps or standardized steps. They are just different.

Q: Okay, are you saying this bus had steps that were different style?

A: They were styled different than any regular bus that I normally drove

    \*    \*    \*    \*    \*    \*    \*

Q: Was there anything wet on the steps?

A: Not that I remember.

Q: Do you remember whether you stepped on anything at all?

A: I don't remember.

Q: To the best of your understanding how do you think that it happened that you fell?

A: I don't know. I just fell.

Q: I am not trying to make this difficult for you. I am just trying to get an understanding of what happened.

A: Yeah, I don't know. I was just going down the steps and I just fell.

On July 18, 2000, a hearing was held before Deputy Commissioner John Costa. At the hearing, Cornett testified that the difference in the configuration of the steps in the bus she was driving on the date of her injury and her usual bus was the

- 5 -

cause of her accident.  A lengthy discussion then ensued between the deputy commissioner and Cornett regarding the disparity between her deposition testimony and her account at the hearing.

Q  [Deputy Commissioner Costa]:  Okay.
Well, so are you just guessing as to why you
fell or do you really know?

A  [Cornett]:  I really think it was the
steps.

Q:  Well then when the lawyer asked you that
question during the deposition why didn't
you tell him about the steps being the cause
of the fall?

A:  Well, I thought I'd already told him,
you know, that the steps was [sic]
different.

Q:  Right.  You did.  You had.

A:  And I thought that was all the same, you
know.  It . . .

Q:  Well, when he asked you how do you think
it happened that you fell, why couldn't you
have said I fell because the steps were
different?

A:  Well, I thought I'd already told him
once.  I didn't know . . .

Q:  Okay.  You did tell him the steps were
different.  But that's ---

A:  Yes.

Q:  That's something separate from saying
the steps were the cause of your fall.  Can
you appreciate that distinction?

A:  Well, I --- I do now.  But at . . .

Q:  Okay.  Okay.  Well, explain to me then
how "The steps were the cause of my fall."
Equates with "I don't know, I just fell."

＊　　＊　　＊　　＊　　＊　　＊　　＊

A:  I'm trying to.

Q:  Okay.  Okay.  If --- Are you telling me
that at the time of the deposition you had
already concluded that the configuration of
the steps was the cause of your fall?  You
knew that in your own mind at the time of
the deposition?

A:  I think because they were different is
why I fell.

Q:  And did you think that at the time of
the deposition a month ago?

A:  Yes.  But I --- you know --- When I
answered him the first time about the steps
being different, I didn't know, you know ---
when he asked me the other question I
thought, you know, I done [sic] answered the
other one that the steps was [sic]
different.  And then like I said, I just
fell.

By opinion dated July 19, 2000, the deputy commissioner
found Cornett's accident did not arise out of her employment and
denied her claim.  He found Cornett's testimony not credible
based on the substance of her testimony, not her appearance and
demeanor.  The deputy commissioner stated her testimony was
"contrary to everything else in the record . . . most glaringly,
the deposition testimony she gave only a month ago."[2]

---

[2] Commissioner Tarr, in his dissenting opinion, states that
the full commission's majority decision was inconsistent with
its well established rule of deferring to a deputy
commissioner's credibility finding.  The rule, however, is that
while deference is generally given to the deputy commissioner's
credibility finding, the full commission has authority to assess
the credibility of a witness.

- 7 -

Cornett appealed to the full commission. On June 29, 2001, the full commission reversed the deputy commissioner and remanded the case to the deputy commissioner for determination on the remaining issues and entry of an appropriate award. The parties subsequently stipulated to the remaining issues and preserved the employer's challenge to the compensability of Cornett's injuries. The employer appeals.

## II. ANALYSIS

The employer contends on appeal that Cornett did not sustain an injury by accident arising from her employment and that she provided no credible evidence to support her claim. We disagree.

"A claimant's injury arises out of the employment if the manner in which the employer requires the work to be performed is causally related to the resulting injury." Southside

---

When the deputy commissioner's finding of credibility is based, in whole or in part, upon the claimant's appearance and demeanor at the hearing, the commission may have difficulty reversing that finding without recalling the witness. On the other hand, if the deputy commissioner's determination of credibility is based on the substance of the testimony and not upon the witness' demeanor and appearance, such a finding is as determinable by the full commission as by the deputy.

Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 383, 363 S.E.2d 433, 438 (1987); see also Code § 65.2-705.

Virginia Training Ctr. v. Ellis, 33 Va. App. 824, 828, 537 S.E.2d 35, 37 (2000).

> [A]n injury is not compensable merely because it occurred during the performance of some employment duty if the act performed by the employee is not a causative hazard of the employment. Simple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment . . . [these are risks] to which the general public is equally exposed.

Id. at 829-30, 537 S.E.2d at 37. It is well established that a fall down stairs does not arise out of the employment without evidence of a defect in the stairs or evidence that a condition of the employment caused the fall. Southside Virginia Training Ctr. v. Shell, 20 Va. App. 199, 203, 455 S.E.2d 761, 763 (1995). However, an injury sustained as a result of a step of abnormal height or condition is compensable. See Reserve Life Ins. Co. v. Hosey, 208 Va. 568, 159 S.E.2d 633 (1968) (rock steps that were higher than a normal step).

In Boyette v. Prince George County School Board, 69 OIC 110 (1990), the commission awarded benefits to a school bus driver who fell down as she descended the bus steps.

> This record reveals that the employee was finishing her day's work as a school bus driver when she started to descend the metal steps of the bus and fell to the bottom of the stairwell and sustained injury to her left foot. The testimony is uncontroverted that the bus steps are deeper than ordinary steps . . . .

> We find that the bus steps are unusual and not in conformity with normal stair steps and we take notice that a different degree of attention and exertion is required to negotiate them. Under these circumstances, the steps in the employer's bus present a particular risk not encountered in ordinary use of entries, exits, and walkways and that the risk involved caused the employee's fall and injury.

Id.

Like the steps in Boyette, Cornett consistently testified that the steps on her bus were unusual. In her deposition she stated that the steps were angled, different in height, and different from normal bus steps. Also, as in Boyette, the steps of the bus were "different than like say our home steps or standardized steps." Likewise, at the hearing before the deputy commissioner, she stated that they varied in height, depth, and shape. They turned as they rose, were wider than regular steps, angled differently, and were further apart. At the hearing before the deputy commissioner, Cornett opined that the various differences in the bus steps were the cause of her fall and injury.

The medical evidence supports that conclusion. On July 26, 1999, Dr. Dannelly reported that Cornett stepped off her school bus and turned her ankle. He diagnosed a Grade II-III lateral ligament injury and sprain to her left ankle. On August 27, 1999, a mid-calf popliteal tibialis clot was discovered and Cornett was hospitalized. On September 7, 1999, Dr. Handy

- 10 -

evaluated her and noted that Cornett "was stepping off a school bus and twisted her left ankle and had a Grade IV sprain of the left ankle." He diagnosed DVT of the left lower extremity, secondary to the fall. On April 5, 2000, Dr. Dannelly, in an Attending Physicians Report, attributed Cornett's fractured left ankle and DVT to her fall from the school bus.

The record provides sufficient credible evidence for the full commission to infer that the oddity of the step construction made the stairs a condition of the workplace that contributed to her fall and to conclude that Cornett sustained an injury by accident arising out of her employment. "Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Manassas Ice, 13 Va. App. at 229, 409 S.E.2d at 826. "The fact that contrary evidence may be found in the record is of no consequence if credible evidence supports the commission's finding." Id.

The decision of the commission is affirmed.

Affirmed.

- 11 -