COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton and Kelsey
Argued at Richmond, Virginia


RONALD L. MORISSETTE

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1820-02-2        JUDGE D. ARTHUR KELSEY
                                       FEBRUARY 19, 2003
CUSTOM TELEPHONE SERVICE, INC. AND
 VIRGINIA FARM BUREAU FIRE & CASUALTY
 INSURANCE COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Gregory O. Harbison (Geoffrey R. McDonald &
              Associates, P.C., on brief), for appellant.

              Cathie W. Howard (Pierce & Howard, P.C., on
              brief), for appellees.


     Ronald L. Morissette asserts that the Virginia Workers'

Compensation Commission erroneously characterized his claim as a

change-of-condition request seeking "additional compensation," and

thus, subject to the 90-day limitation of Va. Work. Comp. Rule

1.2(B).  Even if the time bar applied, Morissette contends, his

claim nonetheless should have been allowed under the doctrine of

imposition.  For the following reasons, we disagree with

Morissette and affirm the commission.

_____

          * Pursuant to Code § 17.1-413 this opinion is not
designated for publication.

I.

On appeal, "we view the evidence in the light most favorable to the prevailing party" before the commission. <u>Tomes v. James City (County Of) Fire</u>, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002); <u>Grayson County Sch. Bd. v. Cornett</u>, 39 Va. App. 279, 281, 572 S.E.2d 505, 506 (2002).

CTS employed Morissette from December 4, 1997 to August 30, 1999 as a "computer installer." Morissette suffered an injury to his back in October 1998, but was able to work until he experienced severe pain on the morning of December 2, 1998. From December 2, 1998 until January 8, 1999, he was unable to work. During this period, CTS paid Morissette an advance on his wages so that he would have income "until the workmen's compensation first check came in." An award was entered in January 1999 granting Morissette compensation for temporary total incapacitation beginning December 9, 1998. Morissette returned to work on light duty on April 15, 1999. Upon returning to work, Michael Barbeau, president of CTS, told him "things were tight" financially. Morissette told Barbeau "he would work with the company as long as things did not get out of hand," and he returned to work knowing that he would not then receive wages for his light duty work.

On April 16, 1999, Morissette signed an Agreed Statement of Fact (ASF) and Supplemental Memorandum of Agreement (MOA) reflecting that he returned to work on April 15 at a lower than

-

pre-injury average weekly wage of $173.04. The commission approved the MOA and entered a Supplemental Award Order on April 30, 1999, providing Morissette with temporary partial disability benefits in the amount of $464.52 commencing April 15, 1999. From April 15, 1999, through July 26, 1999, a period of over three months, Morissette received partial disability payments from the carrier, Virginia Farm Bureau Fire & Casualty Insurance Company. During this time, however, CTS paid him no wages.

On July 20, 1999, Morissette signed another ASF and supplemental MOA that showed him working at a lower than pre-injury wage of $115.36 as of June 29, 1999. The commission entered a new Supplemental Award Order granting Morissette temporary partial disability benefits in the weekly amount of $502.98 commencing June 29, 1999. Morissette worked at this rate, still not receiving any wages from CTS, for another month. On September 1, 1999, Morissette started his own business and ceased working for CTS.

On November 15, 1999, Barbeau sent a letter stating that CTS would pay Morissette certain reimbursable costs and commissions. Barbeau, however, added that the proffered amount

> does not include the wages (part time workman comp) in the amount of $2768.64 that CTS owes you or the wages of $3461.58 that you were to refund CTS with the workman comp payment. If you insist pursuing the wages for the part time work, you will have to sue CTS over the $2768.64 and we will have to counter sue you for the $3461.58 that is owed CTS.

-

On January 18, 2001, nearly sixteen months after leaving CTS, Morissette filed a claim with the commission.  Morissette's claim letter stated:

> Claimant seeks the payment of <u>temporary total disability benefits</u> from April 15, 1999 through August 30, 1999.  The Commission's file will reflect that he was placed on a <u>Temporary Partial Award</u> during this period that paid only $464.52.  Claimant submits that he returned to work during this period.  However, his employer never paid him any wages.  Accordingly, he should have received <u>full temporary total disability</u> even though he had returned to work due to the employer's failure to make any payments.

(Emphasis added).  The commission characterized the claim as a change-of-condition request seeking additional benefits rather than as a mere enforcement action of an earlier award.  Despite repeated references to the claim as such, Morissette did not object to the characterization of his claim as a change-of-condition request.

CTS defended the claim by asserting that Rule 1.2(B) barred Morissette's request for additional compensation and, alternatively, by seeking a credit for amounts paid to Morissette, including wages paid from December 2, 1998 through January 1999.  Under Rule 1.2(B), "[a]dditional compensation may not be awarded more than 90 days before the filing of the claim with the Commission."  The deputy commissioner agreed with CTS and dismissed Morissette's claim.  The deputy commissioner also awarded CTS a credit against future payments in the amount of

-

$3,887.70.  The full commission affirmed the deputy commissioner's application of Rule 1.2(B) and declined to apply the doctrine of imposition to cure the time default.  Imposition would not be appropriate, the commission held, because Morissette "agreed, or at least acquiesced, that he would not be paid his wages from April 15, 1999, until August 30, 1999, because of the employer's poor financial condition."

## II.

Rule 1.2(B) serves as a narrow exception to the prohibition against retroactive awards.  See generally Bristol Door & Lumber Co. v. Hinkle, 157 Va. 474, 161 S.E. 902 (1932).  The rule allows the commission to award additional compensation "retroactively for a limited period of time" prior to the filing of a change-of-condition request for additional compensation.  Graham v. Peoples Life Ins. Co., 7 Va. App. 61, 68, 372 S.E.2d 161, 165 (1988) (en banc) (interpreting predecessor Rule 13(B)).  The commission is "powerless to award benefits beyond the period authorized by the rule."  Id.

Morissette claims the commissioner erroneously characterized his claim as one for additional compensation (implicating Rule 1.2(B)'s 90-day deadline), rather than one for enforcement of a prior award (implicating the commission's continuing authority under Code § 65.2-710).  If the claim had been properly deemed a mere enforcement action, Morissette argues, the 90-day deadline would not apply.

-

Because Morissette did not make this argument to the commission, we will not consider it on appeal. See Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994); West Alex. Prop. v. First Va. Mort., 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980); Shenk v. Shenk, 39 Va. App. 161, 169, 571 S.E.2d 896, 901 (2002) (To preserve an issue for appeal, the "specific argument" made on appeal must have been made below.).

Though Rule 5A:18 contains a "good cause" or "ends of justice" exception to procedural default, we decline to use it in this case. See generally M. Morgan Cherry & Assocs., Ltd. v. Cherry, 38 Va. App. 693, 701, 568 S.E.2d 391, 395 (2002) (en banc). This exception "is narrow and is to be used sparingly" by appellate courts. Redman v. Commonwealth, 25 Va. App. 215, 220-21, 487 S.E.2d 269, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)). Morissette presents no basis for declaring the commission's application of Rule 1.2(B) to Morissette's claim to be a miscarriage of justice.

Morissette also argues that, even if Rule 1.2(B) bars his claim, the doctrine of imposition should apply and relieve him of his procedural default. Under the imposition doctrine, the commission has "the power and authority not only to make and enforce its awards, but to protect itself and its awards from fraud, imposition and mistake." Harris v. Diamond Constr. Co., 184 Va. 711, 720, 36 S.E.2d 573, 577 (1946); see also Avon Prods.,

-

<u>Inc. v. Ross</u>, 14 Va. App. 1, 7, 415 S.E.2d 225, 228 (1992).  The

doctrine, however, requires a threshold showing of unfairness:

> The doctrine focuses on an employer's or the
> commission's use of superior knowledge of or
> experience with the Workers' Compensation Act
> or use of economic leverage, which results in
> an unjust deprivation to the employee of
> benefits warranted under the Act.

<u>Butler v. City of Virginia Beach</u>, 22 Va. App. 601, 605, 471 S.E.2d

830, 830 (1996).

This threshold showing can be found in all Virginia cases

applying the doctrine.  In <u>Avon Prods., Inc.</u>, 14 Va. App. at 7,

415 S.E.2d at 228, for example, we approved an award where the

employer incorrectly represented to the claimant that all

documents necessary to assure entry of the award had been timely

filed.  Similarly, in <u>Odom v. Red Lobster # 235</u>, 20 Va. App. 228,

456 S.E.2d 140 (1995), we permitted the claimant's late filing of

a claim because the employer and the commission had mistakenly led

her to believe that a timely claim had already been filed.  In

<u>John Driggs Co. v. Sommers</u>, 228 Va. 729, 735, 324 S.E.2d 694, 697

(1985), the Virginia Supreme Court relieved a claimant of an

erroneous average weekly wage calculation prepared by the employer

because the calculation "substantially deviate[d] from the

statutory guidelines."

Here, the commission found that the circumstances of this

particular case have not worked an imposition upon Morissette.  We

agree.  No evidence suggests that CTS misled Morissette or used

-

"superior knowledge of or experience with the Workers' Compensation Act" to deprive Morissette of his claimed compensation. <u>Butler</u>, 22 Va. App. at 605, 471 S.E.2d at 830. In November 1999, two months after Morissette left the employ of CTS, Barbeau admitted that CTS owed Morissette the wages but claimed a setoff for compensation CTS had previously paid. Morissette, however, did not file at that time an enforcement action or even a request for additional compensation. Instead, he waited sixteen months to file a claim for temporary total benefits. Neither Morissette's delay nor his election to treat his claim as one for temporary total benefits can be blamed, even indirectly, on CTS.

### III.

In sum, we affirm the commission's application of Rule 1.2(B) to the claim for additional compensation. Morissette failed to preserve his objection to the commission's characterization of his claim and did not present any persuasive reasons for applying the doctrine of imposition.[1]

<u>Affirmed</u>.

---

[1] We do not address, nor is our holding meant to affect, the possibility of any other viable right of action that may exist to enforce Morissette's wage claim against CTS.