COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Russell and Senior Judge Haley
Argued by videoconference

UNPUBLISHED

RODNEY MITCHELL

MEMORANDUM OPINION[*] BY
v.      Record No. 0415-21-4      JUDGE JAMES W. HALEY, JR.
OCTOBER 5, 2021

WEATHER CONTROL, INCORPORATED AND
  ACCIDENT FUND GENERAL INSURANCE COMPANY

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

David M. Snyder (ChasenBoscolo Injury Lawyers, on brief), for
appellant.

Roberta A. Paluck (Kwabena A. Akowuah; Ford Richardson, PC, on
brief), for appellees.

Rodney Mitchell (claimant) appeals a decision of the Workers' Compensation

Commission denying his claim for benefits. He challenges the Commission's findings that he

was not the beneficiary of a *de facto* award and that he had not sustained a compensable injury

by accident. For the following reasons, we affirm the Commission's denial of benefits.

BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence

and all reasonable inferences that may be drawn from that evidence are viewed in the light most

favorable to the party prevailing below." Anderson v. Anderson, 65 Va. App. 354, 361 (2015)

(quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005) (*en banc*)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In August 2018, claimant was employed as a technician with Weather Control, Incorporated (employer), where he serviced heating, ventilation, air conditioning, and refrigeration systems. On August 13, 2018, claimant was tasked with repairing a heat pump unit on the roof of a bakery. Claimant testified that he ascended twenty rungs of a metal ladder to access the roof but struck his left knee on the top rung. He stated that he felt a "hard bang on [his] knee" and that it was swollen and "just painful."

Upon reaching the roof, claimant laid down and rubbed his leg for approximately fifteen minutes. He then stood and walked thirty feet to the heat pump unit. He remained standing for approximately thirty minutes while he diagnosed the problem with the heat pump. Having done so, claimant descended the ladder. He then walked fifty feet to the front desk of the bakery to secure a signature on his paperwork and walked out of the building while carrying only two pieces of paper.

As claimant began to descend the bakery's outside steps, his leg "blew up like [a] shotgun blast" and he fell to the ground. The steps had no defect, and nothing was blocking claimant's view. Claimant asserted that he had been able to walk with a limp after striking his knee on the ladder, but the pain was "more intense" and he could not walk after the "sudden pop" on the bakery stairs. Claimant was transported to the emergency room and was ultimately treated by Dr. Edward Chang, who diagnosed him with a torn quadriceps tendon. Dr. Chang performed two surgeries on claimant to repair the tendon in August 2018 and March 2019.

The emergency room records indicated that claimant reported that the injury occurred as he descended steps. Claimant also reported a history of knee pain over the preceding year and claimed that his knee had buckled frequently. Nevertheless, claimant testified that he had not reported that information to hospital staff and did not know why the hospital would include it in his medical history.

Dr. Chang's records also indicated that claimant initially reported that the injury occurred as he descended steps at work. Despite the initial report, after considering claimant's deposition testimony that the injury occurred after he struck his knee on a metal ladder rung, Dr. Chang opined that the ladder strike could be a "possible contribution" to the quadricep rupture because "a knee contusion may have led to altered gait mechanics which may have caused his rupture."

Employer filed its "First Report of Injury" with the Commission on the day the incident occurred, listing the cause of injury as a "[f]all, [s]lip or [t]rip [i]njury [o]n [s]tairs." Claimant filed his initial claim for benefits with the Commission on November 20, 2018, alleging an injury only to his left quadricep after he "fell down steps." Employer mailed "agreement forms" to claimant, which provided compensation for the injury he alleged in his initial claim for benefits, but claimant never signed and returned the agreement forms. Notwithstanding the unsigned agreement forms, employer voluntarily made weekly, $1,082 temporary total disability payments to claimant beginning on the date of the accident and paid medical benefits, including the cost of claimant's two surgeries.

On April 14, 2020, claimant filed an amended claim for benefits, alleging injuries to "his left and right legs, back and neck during the course and scope of his employment." The amended claim sought compensation for total wage loss from the date of the accident, permanent disability, and lifetime medical costs for the injury. Claimant, who still had not executed any of the agreement forms employer had sent to him, requested a hearing. After notice of the hearing, employer disputed the compensability of claimant's injuries, though it continued its weekly temporary total disability payments until one week before the hearing.

At the hearing before the deputy commissioner, claimant sought a *de facto* award based on employer's voluntary and ongoing payments for temporary total disability benefits. He also sought medical benefits for his injuries and wage loss benefits. After the hearing, the deputy

commissioner ruled that claimant "did not carry his burden of proving a compensable left leg . . . injury" and denied his request for a *de facto* award. The deputy commissioner found that although claimant testified "that he hit his left knee on the rung of a ladder," there was not a "left knee contusion" diagnosis "and the primary injury claimed [was] a left quadriceps tendon rupture." The deputy commissioner further found that claimant's description of the accident "compel[led]" the conclusion that the injury "occurred when he was walking and carrying nothing other than paperwork in his hands." Finally, the deputy commissioner held that Dr. Chang's medical opinions did not support a causal relationship between the claimed knee strike on a ladder and the quadricep rupture because the opinion was speculative and inconsistent with claimant's initial reports at the emergency room and to Dr. Chang, which did not mention a knee-strike on a ladder.

The full Commission affirmed the deputy commissioner's opinion and denied the claim.[1] The Commission found that claimant was not entitled to a *de facto* award because he did not sign or return the agreement forms employer had sent him shortly after the accident. Continuing, the Commission ruled that "even if" employer had agreed to a compensable accident, it contested compensability after claimant alleged additional injuries by filing an amended claim for benefits form and requesting a hearing. Regarding the compensability of the injury, the Commission found that the medical records did not reflect claimant's description of the events and did not causally connect the ladder incident to the quadricep tear. The Commission emphasized that

---

[1] One commissioner "reluctantly" concurred, opining that under the current workers' compensation system, the dependence upon signed agreement forms can lead to injustice as in this case where "the employer was permitted to reverse course" after paying benefits for two years and then dispute compensability. The commissioner, however, acknowledged that the record was insufficient to establish that the employer accepted the claim and agreed that under the current law, a *de facto* award was not appropriate.

Dr. Chang's statements were "couched in possibilities, not probabilities, and [were] insufficient to prove a causal connection." This appeal follows.

## ANALYSIS

On appeal, claimant argues that the Commission erred by finding that "a *de facto* award should not have been imputed." He further contends that the Commission erred by finding that the evidence was insufficient to establish that he suffered a compensable injury. We disagree.

### A. Standard of Review

Decisions of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" Jeffreys v. Uninsured Employer's Fund, 297 Va. 82, 87 (2019) (quoting Caskey v. Dan River Mills, Inc., 225 Va. 405, 411 (1983)). Instead, "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." Artis, 45 Va. App. 83-84 (quoting Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222 (1988)). "'The scope of a judicial review of the fact finding function of a workers' compensation commission . . . is "severely limited, partly in deference to the agency's expertise in a specialized field."'" Roske v. Culbertson Co., 62 Va. App. 512, 517 (2013) (quoting Southside Va. Training Ctr. v. Ellis, 33 Va. App. 824, 828 (2000)). Conversely, "the [C]ommission's legal determinations are not binding on appeal and will be reviewed *de novo*." Id. (quoting Wainwright v. Newport News Shipbuilding & Dry Dock Co., 50 Va. App. 421, 430 (2007)).

B. *De Facto* Award

Claimant argues that a "*de facto* award existed . . . because [employer] paid temporary total disability benefits and medical benefits for over two years without contesting the compensability of the claim and sent agreement forms" and he relied on employer's actions to his detriment. He asserts that the Commission's finding that there was "no evidence" of an agreement is "belied" by the fact that the employer sent agreement forms to him. Claimant asserts that a miscommunication between the parties caused him to request a hearing rather than sign the agreement forms.

*De facto* awards are based on Code § 65.2-701(A), which provides that if, after an injury, "the employer and the injured employee . . . reach an agreement in regard to compensation or in compromise of a claim for compensation under this title, a memorandum of the agreement in the form prescribed by the Commission *shall* be filed with the Commission for approval." (Emphasis added). "[A] *de facto* award is 'a legal fiction crafted by the courts, "a creature of case law not statutory law,"'" and is designed to prevent employers from avoiding liability by ignoring "'the mandatory wording'" of Code § 65.2-701. Roske, 62 Va. App. at 520-21 (first quoting Lysable Transport, Inc. v. Patton, 57 Va. App. 408, 414 (2010); then quoting National Linen Service v. McGuinn, 5 Va. App. 265, 270 (1987) (*en banc*)).

> [W]hen "the employer has *stipulated to the compensability of the claim*, has made payments to the employee for some significant period of time without filing a memorandum of agreement, and *fails to contest the compensability of the injury*," . . . it is "reasonable to infer that the parties have reached an agreement" regarding compensability of the claim.

Lysable Transp., 57 Va. App. at 415 (first quoting Ryan's Family Steak Houses v. Gowan, 32 Va. App. 459, 463 (2000); then quoting McGuinn, 5 Va. App. at 269-70 (emphasis added)).

"The *de facto* award doctrine permits the [C]ommission to impute an award based upon" such an *actual* "agreement or stipulation." Id. at 416. But the doctrine "does not authorize the [C]omission to impute an award based upon an *imputed* agreement or stipulation." Id. (emphasis added). Indeed, it is well-established that "[m]aking voluntary payments, by itself, falls far short of satisfying the preconditions of the *de facto* award doctrine." Id. at 415. And "[a]n employer's 'voluntary payment of compensation or disability benefits does not waive its right to assert defenses' because employers should be free 'to make voluntary payments without running the risk of being held thereby to have made an irrevocable admission of liability.'" Id. at 416 (first quoting Watts v. P & J Hauling, Inc., 41 Va. App. 278, 286 (2003); then quoting 7 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 127.04[3] (2010)).

The *de facto* award doctrine does not apply in this case because the record shows that there was no actual agreement between claimant and employer. As the Commission found, claimant neither signed nor returned the agreement forms to employer, manifesting that he had not actually agreed to the terms employer offered. While claimant summarily concludes on brief that a miscommunication between the parties caused him to request a hearing rather than sign the agreement forms, he cites no evidence in the record of such a miscommunication. Instead, the record demonstrates that there was no agreement between the parties and employer consistently contested the compensability of the claim after claimant amended and enlarged his claim and requested a hearing.

In sum, the record contains no evidence of an actual agreement or stipulation between the parties regarding the compensability of the accident. Accordingly, the Commission did not err by concluding that a *de facto* award was not appropriate.

C.  Compensability

Claimant argues that the Commission erred in finding that he did not suffer a compensable injury by accident.  He asserts that his testimony, standing alone, established that he sustained some injury when he struck his knee on the ladder.  He contends that the "simple explanation" for why the cause of the injury was not reflected in the medical records was that "the doctors . . . did not have the opportunity to examine him" and "focused on the more serious tendon rupture injury."  Moreover, claimant asserts that Dr. Chang "agreed, to a reasonable degree of medical certainty, that a knee contusion leading to an altered gait could have caused the rupture of the tendon."  Accordingly, he concludes that when he "sustained a tendon rupture while limping due to the pain from striking his knee on the ladder, it was as a compensable consequence of his initial injury."

A compensable injury is an injury "by accident arising out of and in the course of the employment."  Van Buren v. Augusta Cnty., 66 Va. App. 441, 449 (2016) (quoting Code § 65.2-101).  To prove an injury by accident, a claimant must prove "(1) an identifiable accident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change."  Hoffman v. Carter, 50 Va. App. 199, 212 (2007) (quoting Chesterfield Cnty. v. Dunn, 9 Va. App. 475, 476 (1990)).  "[A]n injury is not compensable merely because it occurred during the performance of some employment duty if the act performed by the employee is not a causative hazard of the employment.  Simple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment."  Ellis, 33 Va. App. at 829.  "Thus, an injury sustained as a result of a fall on stairs, for example, 'does not arise out of the employment without evidence [that] a defect in the stairs or . . . a condition of the employment

- 8 -

caused the fall.'" Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 341 (2007) (quoting Grayson Sch. Bd. v. Cornett, 39 Va. App. 279, 287 (2002) (alterations in original)).

We will not reverse the Commission's finding that claimant's injury was not compensable because the record supports the Commission's finding that claimant's version of events was not credible. Claimant's initial claim for benefits, the emergency room medical records, and Dr. Chang's medical records all indicated that claimant sustained his injury when he "fell down steps," not when he struck his knee on a ladder rung. Claimant's testimony that he struck his knee on a ladder rung before he fell on the steps notwithstanding, the medical records contain no mention of the ladder until a year and a half after the accident. In fact, the emergency room records indicated at least a year-long history of knee pain and buckling before the August 13, 2018 incident occurred, an inconsistency which claimant could not explain.

In addition, the Commission found that Dr. Chang's statements only contained possibilities and were insufficient to prove a causal connection between the incident and a structural body change. "'A medical opinion based on a "possibility" is irrelevant, purely speculative and hence, inadmissible.'" Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 28 (2005) (quoting Spruill v. Commonwealth, 221 Va. 475, 479 (1980)). If an expert cannot opine that it "is at least more probable than not that the [injury] arose out of and in the course of employment, compensation must and should be denied . . . because the law requires more than simply proof that the [injury] 'might' have been caused by a particular result." Westmoreland, 7 Va. App. at 224. In this case, Dr. Chang stated only that a strike to the knee while climbing a ladder could be a "possible contribution" to the quadricep rupture, *if* it "led to altered gait mechanics." That speculative opinion did not establish that such a knee-strike, more probably than not, caused claimant's quadriceps rupture. Instead, it was a hypothetical speculation as to

- 9 -

how such a knee strike might have contributed to the injury.  Such speculation is insufficient to prove a compensable injury by accident.  <u>Westmoreland</u>, 7 Va. App. at 224.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Commission.

<u>Affirmed.</u>