COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


NURSES 4 YOU, INC. AND AMERICAN
 ZURICH INSURANCE COMPANY
                                                                OPINION BY
v.        Record No. 0952-06-2                    JUDGE JEAN HARRISON CLEMENTS
                                                               FEBRUARY 20, 2007
KAREN T. FERRIS


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Robert A. Rapaport (Kira A. Ligato; Clarke, Dolph, Rapaport,
            Hardy & Hull, P.L.C., on brief), for appellants.

            Sean P. Kavanagh (Jenkins, Block & Associates, P.C, on brief), for
            appellee.


        Nurses 4 You, Inc. and American Zurich Insurance Company (collectively, employer)

appeal a decision of the Workers' Compensation Commission (commission) awarding Karen T.

Ferris (claimant) medical benefits for the injury she sustained when she fell on a wheelchair

ramp.  Employer contends the commission erred in concluding that clamaint's injury arose out of

her employment.  Finding no error, we affirm the commission's decision.

                                       I.  BACKGROUND

        The relevant facts are not in dispute.  On December 17, 2004, while employed by

employer as a private duty nurse, claimant accompanied her patient, who was confined to a

wheelchair, to his doctor's office for an appointment.  Upon arriving at the office's parking lot,

claimant and the patient parked in a reserved space next to a curbside wheelchair ramp that

provided access to the sidewalk outside the doctor's office.  After exiting the van, claimant

pushed the patient up the ramp and wheeled him into the doctor's office.  Claimant then headed

back to the van to retrieve some paperwork and personal items needed by the patient. However, as claimant started down the same wheelchair ramp she had pushed the patient up earlier, she stumbled and fell, breaking her right wrist.

After receiving medical treatment for her wrist, claimant filed with the commission a claim for medical benefits. Employer denied the claim, asserting claimant's injury did not arise out of her employment. The deputy commissioner conducted an evidentiary hearing on the claim.

At that hearing, claimant and employer each introduced into evidence a photograph of the wheelchair ramp in question. Claimant identified both pictures as accurately depicting the ramp's condition when she fell and injured her wrist. Both photographs showed that the ramp was rectangular in shape; made of light, pebbly concrete; and in good repair. They further showed that, as viewed straight on from the parking lot, the front, left, and right sides of the ramp inclined from the level of the asphalt parking lot up to the level of the top of the concrete curb and the adjoining concrete sidewalk. The back side of the ramp abutted the curb. The middle third of the back side of the ramp was level with the top of the curb. The left and right outer thirds of the back side were angled down to the level of the parking lot. The photographs also showed that the area of the parking lot directly in front of the ramp was marked with a series of broad, parallel, white lines apparently intended to discourage parking in front of the wheelchair ramp. This demarcated area was almost as wide as the front of the ramp. The ramp, curb, and sidewalk had no markings on them, and, except for the crosswalk-like marking on the parking lot in front of the ramp and a handicapped parking sign next to the sidewalk behind the ramp, no other markings or signs were in the area of the ramp.

Claimant testified that, when, in returning to the van, she stepped onto the wheelchair ramp, her left foot landed in the center rear portion of the ramp, which, as she expected, was

even with the curb and sidewalk. Based on her perception of the ramp as she approached it from the sidewalk, she also thought that, when she stepped with her right foot onto the ramp near the curb, it would land at the same level. Instead, though, it came down on the rear part of the ramp that was sloped down and, thus, a few inches lower than the center rear portion of the ramp. Because she was unprepared for the lower height at which her right foot landed, claimant lost her balance and fell. Claimant further testified as follows:

> Coming down the ramp was a great deal different than going up the ramp with the wheelchair because at eye level you think you're on solid ground. And I was walking and all of a sudden I had ground and then I had no ground . . . .

>   *       *       *       *       *       *       *

> Because I thought I was---from the point of view that I was coming from---it's the same ramp I [had] just come up with the wheelchair. From the angle as you see it, it looks as if it blends in with the curb until you go to step and it gives you the impression you have solid ground and you don't.

Claimant also testified that she had nothing in her hands or arms when she fell. When asked if the concrete on the ramp was broken, claimant responded that she did not "have an opportunity to notice that." She did notice "there was gravel in the area . . . on the pavement" because she scraped her skin on it when she fell, but she did not suggest the gravel caused her fall. Nor did she suggest the ramp was wet or slippery or that she was hurried or distracted when she descended the ramp and fell. Instead, she blamed the fall strictly on her inability, in approaching the ramp from the doctor's office, to tell that the rear side portion of the ramp, onto which she stepped with her right foot, was lower than the rear center portion of the ramp, onto which she had first stepped with her left foot. "From the direction I was coming," she testified, "I thought my right [foot would land] on the part [of the ramp] that was level with the curb."

Accepting claimant's testimony that her "perspective looking down on the ramp, which was uniform in coloration without demarcation, created an optical illusion that [led] her to

- 3 -

believe that the part of the ramp on which she stepped with her right foot was level with the curb," the deputy commissioner found that claimant's "injury arose out of her employment."

Upon review, a majority of the full commission affirmed the deputy commissioner's decision that claimant's injury arose out of her employment, noting as follows:

> [T]he claimant testified that she mistakenly believed the spot on which she stepped with her right foot was level with the curb because of her perspective from the top of the ramp. The Deputy Commissioner found the claimant's testimony regarding the mechanism of her accident to be implicitly credible, and we defer to the Deputy Commissioner's assessment in this regard. Moreover, our [r]eview of the relevant photographs leads us to conclude that a person standing on the sidewalk/curb and looking down at the ramp from that particular vantage point may perceive the sides of the ramp (nearest to the sidewalk) as being level with the curb.
> Thus, although the ramp upon which the claimant fell may not have been "defective" *per se*, and while we also acknowledge that the claimant did not prove the location of her accident was poorly lit or that there were any foreign objects on the ramp causing her to fall, we find that the ramp presented a unique hazard or danger associated with the claimant's employment.

(Citations omitted.)

This appeal by employer followed.

## II. ANALYSIS

To recover benefits under the Workers' Compensation Act, an injured employee "must prove by a preponderance of the evidence that the injury arose 'out of and in the course of the employment.'" Lucas v. Fed. Express Corp., 41 Va. App. 130, 133, 583 S.E.2d 56, 58 (2003) (quoting Code § 65.2-101). In this case, employer does not dispute that claimant proved the injury she suffered on December 17, 2004, when she fell on the wheelchair ramp, occurred in the course of claimant's employment. Rather, employer contends solely that claimant failed to prove the injury arose out of her employment because she did not show, as she must, "that either a defect in the ramp or a condition of her employment caused or contributed to her fall." Thus,

employer concludes, the commission erred in determining that claimant's injury arose out of her employment. We disagree.

The issue whether an employee's work-related injury arose out of the employment "involves a mixed question of law and fact, which we review *de novo* on appeal." Blaustein v. Mitre Corp., 36 Va. App. 344, 348, 550 S.E.2d 336, 338 (2001). In conducting that review, "we must view the evidence in the light most favorable to the party who prevailed before the commission." K & K Repairs & Constr. v. Endicott, 47 Va. App. 1, 6, 622 S.E.2d 227, 229 (2005). "Factual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal." Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993). Likewise, "[w]here reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal." Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). "In determining whether credible evidence exists to support the commission's findings of fact, '[we do] not retry the facts, reweigh . . . the evidence, or make [our] own determination of the credibility of the witnesses.'" Tex Tech Indus. v. Ellis, 44 Va. App. 497, 504, 605 S.E.2d 759, 762 (2004) (quoting Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

In determining whether an employee's injury arose out of the employment, we apply "the 'actual risk' test, which 'requires that the employment subject the employee to the particular danger that brought about his or her injury.'" Smithfield Packing Co. v. Carlton, 29 Va. App. 176, 181, 510 S.E.2d 740, 742 (1999) (quoting Lipsey v. Case, 248 Va. 59, 61, 445 S.E.2d 105, 106 (1994)). Under this test, an employee's "'injury arises "out of" the employment[] when there is apparent to the rational mind[,] upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the

- 5 -

resulting injury.'" Combs v. Virginia Elec. & Power Co., 259 Va. 503, 509, 525 S.E.2d 278, 282 (2000) (quoting In re Employers' Liab. Assur. Corp., 102 N.E. 697, 697 (Mass. 1913)).

> Excluded is an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, incidental to the character of the business, and not independent of the master-servant relationship. The event must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

United Parcel Service v. Fetterman, 230 Va. 257, 258-59, 336 S.E.2d 892, 893 (1985) (per curiam). Accordingly, an injury does not arise out of the employment "merely because it occurred during the performance of some employment duty if the act performed by the employee is not a causative hazard of the employment. Simple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment." Southside Virginia Training Ctr. v. Ellis, 33 Va. App. 824, 829, 537 S.E.2d 35, 37 (2000); see also Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989) ("The mere happening of an accident at the workplace, not caused by any work related risk or significant work related exertion, is not compensable.").

Thus, an injury sustained as a result of a fall on stairs, for example, "does not arise out of the employment without evidence [that] a defect in the stairs or . . . a condition of the employment caused the fall." Grayson Sch. Bd. v. Cornett, 39 Va. App. 279, 287, 572 S.E.2d 505, 509 (2002) (citing Southside Virginia Training Ctr. v. Shell, 20 Va. App. 199, 203, 455 S.E.2d 761, 763 (1995)). However, the condition of the stairs that caused the injury need not have been overtly dangerous (i.e., unduly slippery, in disrepair, poorly lit, or structurally deficient) to constitute a "defect." It is enough that the stairs were of such a nature that they required an increased degree of attentiveness to negotiate them. Id. For instance, "an injury sustained as a result of a step of abnormal height or condition is compensable." Id. Indeed, even

a step that is "just a little bit higher than usual" can constitute a risk of employment. <u>Reserve Life Ins. Co. v. Hosey</u>, 208 Va. 568, 569, 159 S.E.2d 633, 634 (1968).

Applying these principles to the facts of this case, we agree with employer that the analysis applicable to an injury sustained as a result of a fall on stairs also applies to the injury claimant suffered while using the curbside wheelchair ramp at issue in this case. For purposes relevant here, the situations are analogous. Indeed, like the mere act of traversing a set of stairs, the mere act of traversing such a ramp does not, by itself, involve a work-related risk that justifies compensation. "Hence, our inquiry must be whether credible evidence supports a finding that a defect in the [ramp] or a condition of [claimant's] employment caused her to fall . . . and injure herself." <u>Shell</u>, 20 Va. App. at 203, 455 S.E.2d at 763.

Upon reviewing the record, we conclude that credible evidence supports the commission's factual finding that a defect in the ramp—namely, "that a person standing on the sidewalk/curb and looking down at the ramp from that particular vantage point may perceive the sides of the ramp (nearest to the sidewalk) as being level with the curb"—caused claimant's fall and resultant injury. Claimant consistently testified that, in approaching the ramp as she headed back to the van to retrieve some items for her patient, she could not tell from looking at the ramp from that perspective that the sides of the ramp near the curb were not level with the center portion of the ramp near the curb. Thus, she testified, when she stepped onto the side portion of the ramp, she expected it be at the same level as the center portion of the ramp. Unprepared for the lower height, she lost her balance and fell, sustaining the broken wrist. The commission accepted claimant's testimony as credible.

The commission also found that the photographic evidence submitted by the parties supported claimant's assertion that she was unable to tell, in approaching the ramp from the rear, that the sides of the ramp sloped down to the pavement. We agree with the commission's

- 7 -

assessment of that evidence.  The photographs in the record show that the sidewalk, curb, and ramp are virtually the same light color, in stark contrast to the dark asphalt of the parking lot, and that the angles visibly formed where the sloping sides of the rear of the ramp abut the curb are observable only when approaching the ramp from the parking lot.  The photographs also show that the lined area of the parking lot in front of the ramp, which is nearly as wide as the ramp, resembles a crosswalk and appears to suggest that passage from the curb onto the ramp may be safely performed across the entire width of the ramp, when in fact only the center portion of the ramp is level with the curb.  The photographs further reveal that there are no markings on the sidewalk, curb, ramp, or parking lot that indicate that only the center rear portion of the ramp is level with the curb and sidewalk.  It is clear from this evidence that the ramp was of such a nature that it required an increased degree of attentiveness to negotiate its descent from the sidewalk and curb.  Thus, a "rational mind" could find, upon consideration of the totality of these circumstances, that a causal connection existed between the conditions under which claimant's work was required to be performed and her injury.  Combs, 259 Va. at 509, 525 S.E.2d at 282; Cornett, 39 Va. App. at 287, 572 S.E.2d at 509.

Moreover, it matters not that claimant had gone up the ramp shortly before suffering the injury.  She was pushing her patient in the wheelchair at the time and was not required to examine and memorize the ramp's structural nuances during its ascent.  As shown by the evidence, going down the ramp presented a risk not faced when ascending it.

Additionally, it is of no consequence that claimant may have been exposed to the same risk apart from her employment or that members of the public may have been exposed to the same risk.  Claimant's employment required her to accompany her patient to the doctor's office.  Because her patient was wheelchair bound, claimant and the patient parked in a reserved space next to the wheelchair ramp and used the ramp to access the doctor's office.  Having to return to

the van to retrieve some paperwork and other items for the patient, claimant used the same direct route to return to the van. Thus, unlike the general public, who could traverse the unramped portion of the curb anywhere along the sidewalk according to where they parked, claimant was exposed to the risk of injury while performing a task necessary to her employment. Hence, by reason of her job responsibilities, claimant was more exposed to the risk of the ramp than ordinary members of the public and more exposed to the risk than she would be apart from her employment. Consequently, claimant's risk of injury was "peculiar to [her] job and not one to which the general public [was] equally exposed." Vint v. Alleghany Reg'l Hosp., 32 Va. App. 60, 65, 526 S.E.2d 295, 297 (2000).

## III. CONCLUSION

For these reasons, we hold that claimant satisfied her burden of proving that her injury arose out of her employment. Accordingly, we affirm the commission's decision.

Affirmed.