FRANK, J.,
dissenting.
I respectfully dissent and would reverse the decision of the commission and remand for further proceedings.
*411 The facts are undisputed. Claimant worked for employee as a host/server. Part of his work responsibilities was to make food recommendations to the guests. To that end, employer periodically conducted food tasting demonstration programs to introduce staff to new menu items. Staff would then be able to describe the taste to customers and to recommend the new menu items. Claimant indicated these recommendations actually assist guests in selecting their food.
Prior to the food demonstration, staff would be briefed on the ingredients, food preparation, and what items accompany the selection. Staff would then taste whatever foods they chose to eat. These tastings were at no cost to the employees and occurred while employees were “on the clock.”
Browning Bridges, claimant’s supervisor, testified the food tasting activity was to familiarize staff with the taste of new foods so they could explain those tastes to guests. Part of a host/server’s employment responsibilities is to “sell the food.” While attendance at the food tasting activities is mandatory, no employee is required to eat anything they do not want to eat.[7] However, all host/servers are evaluated on the effectiveness of their recommendations to guests, and failure to make such recommendations can result in counseling by management.[8] Employer even employs “secret shoppers” to assess staff members’ performance, including recommendations of menu items.
On January 4, 2010, during a food tasting demonstration, claimant tasted rice and then a quesadilla. The quesadilla *412 lodged in his throat and perforated his esophagus. Claimant was taken to an emergency room and was diagnosed with esophageal perforation and collapsed lung. He underwent emergency surgery.
The deputy commissioner found claimant’s injuries did not arise out of his employment. The full commission affirmed, summarizing the deputy as follows:
The Deputy Commissioner analogized these cases to the cases of employees traversing stairs and found that all of the foods in the cited cases were unusual or defective. Finding that there was no evidence of a defect in the quesadilla, he found that the act of eating an employee meal, •with no other factors involved, is not a risk of the employment, and he denied the claim.
The commission concluded:
On [rjeview, we find that the claimant’s injury did not arise out of a risk of his employment. In cases of injury due to food provided by the employer, we have found compensable injuries only when there was something unusual or abnormal about the food, i.e. it was spicy, hot in temperature, or contained a hard object. Here, there was no problem documented with the quesadilla which became stuck in the claimant’s throat and caused his injury. The claimant did not assert that it was something that he should not eat because of his medical condition. The claimant would have been equally exposed to any risk connected with eating an ordinary quesadilla had he eaten it apart from his employment.
The question before this Court is whether an injury caused by claimant choking on food supplied by employer during a food tasting demonstration arises out of the course of his employment. When we are presented with “essentially undisputed facts,” as we are here, a de novo standard of appellate review governs the question whether the injury satisfies the “actual risk” test. Hilton v. Martin, 275 Va. 176, 180, 654 S.E.2d 572, 574 (2008) (characterizing the “arising out of’ *413 issue as a “question of law” when the parties present undisputed facts).
Under the Workers’ Compensation Act, an employee must prove by a preponderance of the evidence that his injury arose “out of and in the course of [his] employment” to qualify for compensation benefits. Code § 65.2-101; see also Marketing Profiles v. Hill, 17 Va.App. 431, 433, 437 S.E.2d 727, 729 (1993) (en banc).
The phrase “arising out of and in the course of the employment” covers those accidents which cause injury to an employee while he is discharging some duty he is authorized to perform in furtherance of his employer’s business, either directly or indirectly. Cohen v. Cohen’s Dep’t Store, 171 Va. 106, 110, 198 S.E. 476, 477 (1938).
Virginia employs the “actual risk” test to determine whether an injury “arises out of’ the employment. Green Hand Nursery, Inc. v. Loveless, 55 Va.App. 134, 141, 684 S.E.2d 818, 822 (2009). The Supreme Court of Virginia has held that an injury is not compensable if it:
“cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.”
Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938) (quoting In re McNicol, 215 Mass. 497, 102 N.E. 697, 697 (1913)).
The commission found that claimant, by eating the quesadilla, would have been equally exposed to such injury apart from his employment. Employer argues on appeal that claimant *414 faced a risk no different than a risk to which the general public is equally exposed.
However, in Green Hand Nursery we held “the fact that the general public may be exposed to the same risk is not dispositive in the analysis of whether the injury arose out of the employment.” 55 Va.App. at 144, 684 S.E.2d at 823.
In Green Hand Nursery, claimant was struck by a vehicle while manually shutting off a series of water sprinklers located twenty-seven feet from a highway. The sprinklers were located in a display section of the nursery which was open to the nursery’s customers who could walk among the plants. Claimant testified that her task of turning off the sprinklers “occupied” her attention. Id. at 139, 684 S.E.2d at 820. When she heard car tires screech, she tried to move out of the car’s path, but potted plants prevented her from retreating in a straight course toward the trees. She had to jump a ditch, taking a less direct route. Id. at 139, 684 S.E.2d at 821.
This Court concluded in that case that claimant’s performance of her job increased the risk of injury by diverting her attention from the danger of the approaching vehicle. Id. at 143, 684 S.E.2d at 823. We explained if the injury can “ ‘fairly be traced to the employment as a contributing proximate cause,’ ” it matters not that the danger is common to the neighborhood. Id. at 145, 684 S.E.2d at 823 (quoting R & T Invs. v. Johns, 228 Va. 249, 253, 321 S.E.2d 287, 290 (1984)).
Thus, our inquiry here is limited to whether there is a causal connection between the choking injury and claimant’s work responsibilities. Is the injury fairly traceable to employment as a contributing proximate cause? I conclude that it is and agree with the dissenting commissioner.
Here the commission concluded that claimant’s injury was not compensable because there was “no problem documented with the quesadilla” and that the claimant would have been equally exposed to any risk associated with eating an ordinary quesadilla apart from his employment. The commission explained that in “cases of injury due to food provided by the employer, we have found compensable injuries only when *415 there was something unusual or abnormal about the food----” However, the cases cited by the deputy and relied upon by the commission do not support such a conclusion.
In Pead v. Busara Restaurant, 00 WC UNP 1947693 (2000), cited in the commission’s opinion, claimant ate a spicy meal prepared by employer for the employees, became ill, and was treated for gastroenteritis. The employer prepared three meals daily for the employees, separate from meals prepared for customers. In finding claimant’s injury arose in the course of employment, the commission’s analysis was not based on the nature of the food, but on the fact that employer provided the meals for employees before, during, and after their shift, and were provided free of charge “which is a characteristic of the employment.”
Ellis v. American Airlines, Inc., 08 WC UNP 2320759 (2008), cited in the commission’s opinion, involved claimant, a flight attendant, who was a passenger on employer’s plane traveling to employer-sponsored training. During the flight, claimant purchased an on-board candy snack. As claimant bit down, a hard object broke one of his teeth. In finding the injury arose out of employment, the commission again did not analyze the nature of the object in the snack, but on the fact that employer controlled what snacks were offered for purchase. The claimant was limited to the on-board food/snacks offered by employer. “[Claimant] could not go anywhere else to obtain food or snacks.”
The commission’s opinion also cites Caprio v. West Point School Board, 98 WC UNP 1894516 (1998), to support its finding. Again, this case fails to do so. Claimant, a school teacher, broke a tooth while eating soup purchased from the school cafeteria. Claimant was required by the school to remain on the school premises during lunch. The commission, in its analysis, did not discuss the nature of the food that caused the injury, but only the circumstances in which claimant ate the food. The commission concluded claimant consumed food provided by employer and she was required to remain on the school premises. Under those facts, the com *416 mission concluded claimant’s employment was a proximate cause of her injury.
In each of the above cited cases, the commission analyzed not whether the food was unusual or defective, but whether eating the food was characteristic of claimant’s employment.
As the Supreme Court of Virginia opined in Lucas v. Lucas, 212 Va. 561, 186 S.E.2d 63 (1972):
“If the voluntary act of an employee which causes an injury is sufficiently related to what the employee is required to do in fulfilling his contract of service, or is one in which someone in a like capacity may or must do in the interest of his employer’s business, the fact that the employee was not actually required to perform the act will not impair his right to recover compensation.”
Id. at 564, 186 S.E.2d at 64 (quoting 7 Sneider, Workmen’s Compensation § 1662(a), at 264 (1945)).
Walking up or down stairs, or any walking, sitting, standing, bending, eating food or drinking are ordinary occurrences of every job and are not risks unique to a particular job. In cases involving stairs, “[i]t is well established that a fall does not arise out of the employment without evidence of a defect in the stairs or evidence that a condition of the employment caused the fall.” Grayson Sch. Bd. v. Cornett, 39 Va.App. 279, 287, 572 S.E.2d 505, 509 (2002) (emphasis added). In those cases, the steps need not be unusual or defective for a fall to be compensable. While an unusual or defective set of steps is a basis for compensation, those factors are not exclusive. The defect or unusual condition of the steps is only relevant to determine whether the causative danger is peculiar to the work and incidental to the character of the business. United Parcel Service v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985).
Clearly, the step cases do not exclude other conditions unique to that particular employment. For example, in Marion Correctional Center v. Henderson, 20 Va.App. 477, 458 S.E.2d 301 (1995), a prison guard fell down steps in a prison *417 because his attention was focused on several inmates, not because of any defect or unusual condition of the step.
We held:
Observation of the guard towers was one of the security functions of his employment. The way in which he performed this aspect of his job increased his risk of falling on this occasion and directly contributed to cause his fall and injury. Cf. Fetterman, 230 Va. at 259, 336 S.E.2d at 893. He would not have been equally exposed to the risk apart from his duty to observe the guard towers and provide security at the facility. Cf. Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938). Henderson’s injury occurred because of the performance of his job duties in a particular manner. Therefore, the cause of the injury was not “unrelated to any hazard common to the workplace.” Fetterman, 230 Va. at 259, 336 S.E.2d at 893.
Henderson, 20 Va.App. at 481, 458 S.E.2d at 303.
In the defective or unusual step cases, or in Henderson, the risks were unique to that particular job, not activities common to all jobs.
The mere act of traversing a set of stairs, or climbing a ramp does not, by itself, involve a work-related risk justifying compensation. Nurses 4 You, Inc. v. Ferris, 49 Va.App. 332, 341, 641 S.E.2d 129, 133 (2007). “Simple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment.” Southside Virginia Training Ctr. v. Ellis, 33 Va.App. 824, 829, 537 S.E.2d 35, 37 (2000). Accordingly, an injury does not arise out of the employment “merely because it occurred during the performance of some employment duty if the act performed by the employee is not a causative hazard of the employment.” Ferris, 49 Va.App. at 341, 641 S.E.2d at 133. By way of example, if a claimant’s job is to test the spacing of steps by walking up and down stairs, and suffers an injury while doing so, we need not evaluate if the steps were defective or unusual because testing stairs is not a normal occurrence of all jobs, but is a causative hazard of that particular employment.
*418 Applying these principles to the facts presented here, I disagree with employer that claimant’s consumption of the quesadilla was simply a “common, human experience” and therefore not arising out of his employment. I conclude that sampling the quesadilla was a causative hazard of claimant’s employment because claimant was “discharging some duty he [was] authorized or directed to perform” in furtherance of his employer’s business. Cohen, 171 Va. at 110, 198 S.E. at 477. Therefore, I need not discuss whether there was a defect in the food he was consuming.
Here, claimant as a host/server, was evaluated partially on the manner in which he recommended food to customers. The food tasting demonstration allowed employees to sample new menu items so they could make these recommendations to customers. Part of the host/server’s job function is to “sell the food.” Claimant’s tasting the quesadilla was to further employer’s goal to “sell the food.” The briefing and the tasting enabled claimant to explain to the customers the new menu items. Claimant’s food sampling fulfilled “his contract of service,” was done in furthering employer’s business, and was incidental to claimant’s work as a host/server. Clearly, claimant’s exposure to the quesadilla was occasioned by the nature of his employment, thus satisfying the “actual risk” test. Green Hand Nursery, 55 Va.App. at 141, 684 S.E.2d at 822. As stated above, it is irrelevant that others outside the workplace might have been exposed to the same injury.
For the foregoing reasons, I respectfully dissent and would reverse the decision of the commission denying claimant benefits and remand for entry of an award.

. Claimant had Crohn’s disease and was not able to eat certain foods. However, claimant's illness was not a causative factor in claimant’s injury. Employer stipulated choking on the quesadilla was the cause of claimant's injuiy, and the medical treatment the claimant received was causally related to the choking.

. While this program was initiated after claimant’s injury, claimant testified the standards of evaluation fairly represented expectations at the time of the injury. Browning Bridges, claimant’s supervisor, confirmed there was a “quality check” in place at the time of claimant’s injury which included an employee's performance in recommending foods to guests.