UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Alston, Chafin and Senior Judge Annunziata
Argued at Alexandria, Virginia

YOUNG JIN KIM

MEMORANDUM OPINION* BY
v.       Record No. 1053-16-4       JUDGE ROSSIE D. ALSTON, JR.
MARCH 7, 2017

ROTO ROOTER SERVICES COMPANY AND
 OLD REPUBLIC INSURANCE COMPANY

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Andrew S. Kasmer for appellant.

Charles F. Midkiff (Ian A. Spreat; Midkiff, Muncie & Ross, P.C.,
on brief), for appellees.


Young Jin Kim (appellant), appeals the decision of the Commission finding that appellant

failed to prove an identifiable incident leading to his injury.  Specifically, appellant's two

assignments of error argue that appellant suffered a compensable "injury by accident" "when he

was pushing, pulling, reaching, bending, and grabbing a hose to unclog a drain over the course of

two to three hours," and as such, appellant argues that his injury occurred at a specific and

definite period of time.  We disagree and affirm the decision of the Commission.

BACKGROUND

On or around May 24, 2015, appellant was injured as a result of working on a backed up

sewer line at the Centreville Cinemax Movie Theater (hereinafter movie theater).  Following the

injury, on May 28, 2015, Linda Galacci-Rogers, of Old Republic Insurance Company,

interviewed appellant.  In the interview, appellant indicated that on May 23, 2015, he worked

from 1:00 p.m. to 10:00 p.m.  Appellant had some knee pain on May 23, 2015, which was a

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Saturday, but stated that it was not until after working the next day that he really noticed the pain. He also indicated that on the night of May 23, 2015, he was on call, and received information from dispatch regarding an emergency. Appellant also had another job starting at 2:00 a.m. on Sunday morning at the movie theater.

Appellant described the work space at the movie theater as "very tiny." The work appellant did at the movie theater involved putting a hose into the main line and then pulling it in and out. While working, appellant's left knee was on the ground. At first, he did not use knee pads because the lines were backed up, but appellant noted that he later put knee pads on due to the pain he was experiencing. Appellant stated "after that [he] couldn't feel [his] knee. And then [he could] feel [that it was] all swollen." Appellant estimated that his knee began hurting between 4:00 a.m. and 5:00 a.m. However, appellant continued working and finished the job around 6:45 a.m.

After calling his manager to report his injury around 2:00 p.m. or 3:00 p.m. the next day, appellant went to Patient First. There, the doctor checked appellant's knee and took an x-ray. The notes from Patient First indicate that appellant "[w]as putting a lot of pressure on the left knee and had significant pain. When he went home he had pain. But when waking up after some time, [the] left knee was significantly swollen and he was not able to bend it." Ultimately, though, appellant was told that he needed to call an orthopedic specialist and was given a prescription for the pain. The following day, which was a Monday, appellant could not walk. While trying to get to the first level of his town house, appellant fell and his left knee twisted to the right and went underneath him.

On June 2, 2015, appellant went to the Washington Orthopedic and Knee Clinic, Inc. and saw Dr. Malek. After an evaluation, appellant was told to begin physical therapy, and was also told that he could not work. The next day, on June 3, 2015, appellant sought medical benefits

and total wage loss benefits due to his injury. On September 15, 2015, Dr. Malek made note that appellant's "MRI was reviewed and [it was] indicative of an osteochondral fracture/lesion[1] in the femoral condyle that corresponds to the mechanism of his injury and his clinical presentation from the beginning." In response to a letter from appellant's counsel, Dr. Malek responded, in relevant part only, that appellant's condition was caused while kneeling down working on the sewer line at the movie theater on May 24, 2015.

On November 23, 2015, a deputy commissioner heard the matter. Appellant testified at the hearing that on May 23, 2015, around 10:00 p.m. he got off work and then around 11:00 p.m. he received an emergency call. About an hour after receiving the emergency call, appellant went to the movie theater. Appellant again described the working conditions. This time, with more specificity, he stated that he was working on a hole in the drywall, which was about a one foot square. After about two and a half hours of pulling the hose in and out, appellant's knee was "very sor[e] and [in a lot of] pain." During the time he was working at the theater, appellant indicated that he was unable to stand. Appellant testified that although the doctor at Patient First told him to see an orthopedic specialist, he went to a chiropractor because all of the specialists had a three-week wait time. Appellant further stated that he did not see a doctor for any left knee pain prior to May 24, 2015 and that he did not have the injury prior to that date.

The cross-examination of appellant included extensive questioning regarding appellant's prior interview where he stated that he was very sore and in pain on Saturday, the day prior to the work at the movie theater. During appellant's original interview, he was asked whether there was a specific incident to his knee or if it was caused from kneeling down too long, to which he answered: "Yeah. Kneeling down a long, long time. Yeah."

---

[1] An osteochondral fracture is a tear of the cartilage covering the end of a bone, within a joint, which is common in the knee joint.

On December 28, 2015, a deputy commissioner awarded appellant $2,087.44 compensation for his pre-injury average weekly wage and $967 per week during temporary total disability benefits beginning May 30, 2015. In this regard, the deputy commissioner determined that appellant carried his burden of proving an "injury by accident" to his left knee on May 24, 2015. In response, on January 13, 2016, appellees requested a review of the opinion.

In an opinion issued on June 2, 2016, the Commission reversed the deputy commissioner's opinion. While the Commission found that appellant kneeled on his left knee for about two and one-half hours, the Commission ultimately concluded that appellant "failed to prove an identifiable incident that caused his injury [and that h]e did not identify a particular movement or action that resulted in the onset of his symptoms." This appeal followed.

ANALYSIS

"On appeal, this Court views the evidence in the light most favorable to the prevailing party below." Van Buren v. Augusta Cty., 66 Va. App. 441, 444, 787 S.E.2d 532, 533 (2016) (quoting Town & Country Hosp., LP v. Davis, 64 Va. App. 658, 660, 770 S.E.2d 790, 791 (2015)). "Factual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal." Id. (quoting Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 339-40, 641 S.E.2d 129, 132 (2007)). The question as to whether appellant suffered an "injury by accident" presents a mixed question of law and fact. Id. at 446, 787 S.E.2d at 534. "[W]hether [the] facts prove [appellant] suffered an 'injury by accident' is a question of law," which we must review *de novo*. Id.

The Workers' Compensation Act "has always required the claimant to carry the burden of proving, by a preponderance of the evidence, (1) an 'injury by accident' or occupational disease, (2) arising out of, and (3) in the course of, the employment." Morris v. Morris, 238 Va. 578, 584, 385 S.E.2d 858, 862 (1989) (citation omitted). Appellant's two assignments of error

essentially boil down to whether appellant was able to specify an "injury by accident," "or, for that matter, whether his injury was even caused by a specific event as opposed to the cumulative effect of the actions he performed" while working within the tight quarters in the movie theater. Van Buren, 66 Va. App. at 450, 787 S.E.2d at 536. If not, the injury is not compensable. To prove an "injury by accident," a claimant must show: "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change." Ogden Aviation Servs. v. Saghy, 32 Va. App. 89, 94, 526 S.E.2d 756, 758 (2000) (quoting Chesterfield Co. v. Dunn, 9 Va. App. 475, 476, 389 S.E.2d 180, 181 (1990)).

Appellant argues that the Commission misapplied Morris, 238 Va. 578, 385 S.E.2d 858, to this case. In Morris, claimant drove a truck to pick up fiberglass materials and, without a forklift to aid the process, lifted ninety-six cartons of fiberglass, each weighing about fifty pounds, from the loading dock into the bed of his truck, eighteen inches below the dock. Id. at 581, 385 S.E.2d at 860. Upon driving away, claimant felt "warmth, dizziness, and nausea." Id. Feeling no relief, he returned to the warehouse for help, and was taken to the hospital by ambulance. Id. There, he was diagnosed with acute myocardial infarction with total occlusion of coronary artery, and was found to have suffered from heart disease for some time. Id. Claimant applied for compensation benefits, but the deputy commissioner denied the application as claimant had failed to prove an "'injury by accident' consisting of an identifiable incident that occurred at a reasonably definite time." Id. The Commission affirmed, and claimant appealed. Id. at 581-82, 385 S.E.2d at 860.

The Virginia Supreme Court stated that

> the injury made its appearance suddenly "at a particular time and
> upon a particular occasion." But . . . that is not enough. In order
> to carry his burden of proving an "injury by accident," a claimant
> must prove that the cause of his injury was an identifiable incident

> or sudden precipitating event and that it resulted in an obvious
> sudden mechanical or structural change in the body.

Id. at 589, 385 S.E.2d at 864-65. In finding that claimant did not carry this burden, the Supreme

Court of Virginia held "that injuries resulting from repetitive trauma, continuing mental or

physical stress, or other cumulative events, as well as injuries sustained at an unknown time,

[we]re *not* 'injuries by accident' within the meaning of Code § 65.1-7." Id. at 589, 385 S.E.2d at

865 (emphasis added).

On the other hand, appellant analogizes Van Buren to the present case. However, this

Court differentiated Van Buren from Morris, noting that the claimant in Van Buren,

> unlike the claimants in Morris, was not engaged in repetitive
> activity. Installing multiple overhead ceiling panels, unloading and
> installing seven steel doors, and lifting ninety-six cartons full of
> fiberglass: any injury resulting from these activities might be
> attributable to "repetitive trauma," a category of injury *not* covered
> by the Workers' Compensation Act.

Van Buren, 66 Va. App. at 452, 787 S.E.2d at 537. This Court further distinguished the case by

noting that the claimant in Van Buren "was engaged in a variety of actions that involved lifting,

holding, twisting, pulling, pushing, grabbing, and bending," and his injury was not the result of

"cumulative events" as the forty-five minutes during which the claimant in Van Buren aided the

injured man "provided the necessary rigidity of temporary prevision to constitute an 'event.'" Id.

Most importantly, though, this Court, in finding that the claimant in Van Buren had suffered an

"injury by accident" agreed with the deputy commissioner in that "to require [claimant] to

pinpoint the exact moment of the onset of pain during an adrenaline[-]fueled rescue attempt

would yield a ridiculous and unjust result." Id. at 455-56, 787 S.E.2d at 539. Moreover, Van

Buren carves out a so-called first responder exception to the rule. Thus, it is inapplicable to the

present case.

We disagree with appellant's argument on brief that because the claimant's injury in <u>Van Buren</u> was found compensable, "there is no question that the injury in the present case is also compensable." The only similarity that we find between the two cases is the description of the movements by both appellant and the claimant in <u>Van Buren</u>. Where the claimant in <u>Van Buren</u> was "lifting, holding, twisting, pulling, pushing, grabbing, and bending," appellant was similarly "pushing, pulling, thrusting, twisting, moving, bending, and guiding the hydro jet." However, unlike the claimant in <u>Van Buren</u>, who was not engaged in any repetitive activity, appellant was repeating the same motions and activities over and over again. In addition, appellant was working full-time, and on May 23, 2015 he had worked for about nine hours from 1:00 p.m. to 10:00 p.m. and was again dispatched by the on-call personnel to a job around 11:00 p.m. that same night. After the emergency job, appellant went to begin the job at the movie theater at 2:00 a.m. At the hearing before the deputy commissioner, appellant stated that he was already "very tired and sore" when he arrived at the movie theater. In fact, when appellant was asked in his interview whether there was a specific incident that caused the injury to his knee, or whether the pain was caused from kneeling down for too long, appellant answered: "Yeah. Kneeling down a long, long time. Yeah." We find this repetitive activity, or "repetitive trauma" to be more analogous to the claimant in <u>Morris</u> who was installing multiple overhead ceiling panels, unloading and installing seven steel doors, and lifting ninety-six cartons full of fiberglass. 238 Va. at 581, 385 S.E.2d at 860.

To the contrary, the claimant in <u>Van Buren</u> was involved an adrenaline-fueled rescue attempt, in which the claimant could not possibly pinpoint an exact moment for his injury. Here, appellant was not involved in a similar situation, but rather, doing his daily work, most of which was done on his knees. During his interview, appellant had difficulty pinpointing when he started to feel his knee pain. At one point he indicated that he felt pain on May 23, 2015, but

- 7 -

later stated that the knee pain actually began on May 24, 2015. Appellant testified that he could not feel his knee and that it was swollen while he was at the movie theater job, yet he did not stop working or report the injury immediately after finishing the job.

Appellant's medical records from Patient First on May 24, 2015 state that he "[w]as putting a lot of pressure on the left knee and had significant pain. When he went home he had pain. But when waking up after some time, [the] left knee was significantly swollen and he was not able to bend it." As such, it is unclear from the record when appellant actually sustained the injury to his left knee. To be sure, appellant had a very long and laborious work schedule between May 23, 2015 and May 24, 2015; however, the record supports the Commission's conclusion that there does not appear to be an identifiable or sudden precipitous event causing appellant's injury.

Appellant's doctor, Dr. Malek, indicated that appellant's injury was indicative of an osteochondral fracture/lesion, which means that the injury could have occurred over time without any identifiable incident. Without an identifiable incident or sudden precipitous event, the facts of this case do not present proof of an injury beyond that of an occupational injury.[2] While this

---

[2] "Occupational *injury*," as used in this context, is not to be confused with the term "occupational *disease*" as defined by Code § 65.2-400. The distinction is apparent in Morris, as the Supreme Court of Virginia "held that *gradually incurred* traumatic injuries or *cumulative* trauma conditions were not compensable." Merillat Indus. v. Parks, 246 Va. 429, 433, 436 S.E.2d 600, 602 (1993) (emphasis added) (differentiating the words disease, as defined by the Act, and injury). An occupational injury, or an injury by gradual growth is "not the result of some particular piece of work done or condition encountered on a definite occasion, but caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work, no one of which can be identified as the cause of the harm." Morris, 238 Va. at 586, 385 S.E.2d at 863.

> Perhaps the most frequently recurring invitation to expand the coverage of the Act has been extended by those who wish to broaden the meaning of the statutory term "injury by accident" to include injuries which, although work-related, are either gradually incurred or sustained at an unknown time.

is contrary to Dr. Malek's belief,[3] it can be reconciled with the Commission's findings.  Given our deferential standard on appeal, and given that there is credible evidence to support the findings of the Commission; such findings are binding upon us on appeal.  See Van Buren, 66 Va. App. at 444, 787 S.E.2d at 533 (quoting Nurses 4 You, Inc., 49 Va. App. at 339-40, 641 S.E.2d at 132).

We find that the Commission did not err in finding that appellant failed to prove an "identifiable incident" which caused his injury.  Thus, appellant's injury is not compensable under the Virginia Workers' Compensation Act.  We affirm the June 2, 2016 decision of the Commission.

Affirmed.

---

It is apparent from the language employed by the drafters of the Act that it was originally intended to provide coverage for the most frequently recurring kinds of industrial accidents, *e.g.*, injuries immediately resulting from hazards of the workplace such as blows from falling objects; injuries from contacts of the body with operating machinery or corrosive chemicals; falls from ladders, catwalks, and the like.

Id. at 584-85, 385 S.E.2d at 862.

The General Assembly has not made any changes despite such invitations.  See id. at 586, 385 S.E.2d at 863.  An "injury by accident," thus, continues to be regarded as one that must occur at a particular time, in a particular place, and by an identifiable accident.  See id. at 585-86, 385 S.E.2d at 862-63 (quoting Aistrop v. Blue Diamond Coal Co., 181 Va. 287, 293, 24 S.E.2d 546, 548 (1943)).

[3] This is supported by Dr. Malek's response to a letter from appellant's counsel, in which Dr. Malek responded that appellant's condition was caused while kneeling down working on the sewer line at the movie theater on May 24, 2015.