COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Beales and Huff
Argued by videoconference

UNPUBLISHED

KENNETH REYNOLDS

MEMORANDUM OPINION* BY
v.        Record No. 0796-20-3        CHIEF JUDGE MARLA GRAFF DECKER
JANUARY 26, 2021

FALLETTA ENTERPRISES, INC. AND
 MASSACHUSETTS BAY INS. CO.


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Hannah Bowie (Osterbind Law, PLLC, on brief), for appellant.

Brian M. Frame (McAngus Goudelock & Courie, PLLC, on brief),
for appellees.


Kenneth Reynolds (the claimant) appeals a ruling of the Virginia Workers'

Compensation Commission denying his claim for benefits for injuries he sustained while

working for Falletta Enterprises, Inc.  He argues that the Commission erred by concluding that

he failed to prove that his injury arose "out of" his employment as required for coverage under

the Virginia Workers' Compensation Act.  We hold that the record supports the Commission's

ruling that the claimant did not prove that his injury arose out of his employment.  Consequently,

we affirm the denial of benefits.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND[1]

Kenneth Reynolds filed a claim alleging that he injured his left knee on August 1, 2019, when he "[s]tepped out of the rear door of [a] work van" while working for Falletta Enterprises. Falletta Enterprises and its insurer, Massachusetts Bay Ins. Co. (collectively the employer), denied his claim for medical and wage loss benefits.

In a hearing before a deputy commissioner, the claimant described himself as a "service plumber" who had worked in that capacity for more than twenty years. He testified in very limited fashion about the circumstances surrounding his injury, which occurred when he stepped out of his "work van."[2] He explained that he "g[o]t in the van through the back door," collected the necessary "stuff," and returned to "the back." The claimant "set down [his] tray" but "still [had] stuff in [his] hand." He then "stepped out of the van" onto the customer's driveway. When he did so, he felt a "twinge" in his left knee but had no "immediate[]" pain and concluded that he was "all right." He "[g]rabbed [his] stuff" and "went in[to] the house." The claimant confirmed that "the way [he] stepped out [of the truck] on August 1" was "the way [he] normally step[ped] out of the truck" and was an activity in which he engaged repeatedly "throughout the work day." He stated that his left leg was very stiff by the time he completed the job, which he described as "just a simple reconnect underneath the kitchen sink."

The claimant further described his injury as "something moving in [his] knee that ha[d] gotten separated, torn or something when [he] stepped out of that van." He sought medical treatment several weeks later when he experienced significant swelling. The claimant was

---

[1] On appeal from the Commission, we view the evidence in the light most favorable to the prevailing party before the Commission, in this case the employer. See Apple Constr. Corp. v. Sexton, 44 Va. App. 458, 460 (2004).

[2] Although the claimant referred to the van in this fashion, no evidence in the record establishes either that the van was provided by his employer or that he was required to use it.

diagnosed as having "primary osteoarthritis, with a Baker's cyst," in his left knee. He received various conservative treatments, but when they failed to reduce his pain, a physician recommended an MRI to determine whether he had a meniscus tear requiring surgical intervention.

At the hearing, the employer defended in part on the ground that the evidence did not prove that the claimant's knee problem arose out of his employment. The deputy commissioner found the claimant's testimony "entirely reliable" and "credible" but held that the claimant failed to meet his burden of proving an injury that arose out of his work as a plumber.

On request for review, the Commission unanimously affirmed the deputy commissioner's denial of benefits. Applying the case law applicable to an injury sustained while traversing steps, it reasoned that no evidence concerning the circumstances under which the claimant exited the vehicle supported the conclusion that a "work-related risk or significant work-related exertion" caused the claimant's injury.

## II. ANALYSIS

The claimant contends that the Commission erred as a matter of law by holding that the evidence failed to prove that his knee injury, which occurred when he stepped out of his work van, arose out of his employment. He further suggests that the Commission improperly relied on evidence concerning the manner in which he stepped out of the van, which he indicated was "normal," as barring a ruling that the injury arose out of the employment. We address these assignments of error together, considering the second one as a component of the first.

The Virginia Workers' Compensation Act provides coverage for injuries by accident that "aris[e] out of and in the course of the employment." Dollar Tree Stores, Inc. v. Wilson, 64 Va. App. 103, 108 (2014) (quoting Code § 65.2-101). Both "conditions must be satisfied before compensation can be awarded." King v. DTH Contract Servs. Inc., 69 Va. App. 703, 712 (2019)

- 3 -

(quoting Graybeal v. Bd. of Supers., 216 Va. 77, 78 (1975)). The arising "out of" and "in the course of" requirements are distinct, and Courts "must be vigilant" not "to conflate the two concepts." Bernard v. Carlson Cos.—TGIF, 60 Va. App. 400, 405 (2012). The claimant bears the burden of proving these elements "by a preponderance of the evidence, and not merely by conjecture or speculation." Cent. State Hosp. v. Wiggers, 230 Va. 157, 159 (1985) (*per curiam*).

"Whether an injury arises out of the employment 'involves a mixed question of law and fact . . . .'" Conner v. City of Danville, 70 Va. App. 192, 200 (2019) (quoting Blaustein v. Mitre Corp., 36 Va. App. 344, 348 (2001)). This Court conducts a purely *de novo* review of the Commission's "ultimate determination as to whether the injury arose out of the claimant's employment." Norris v. ETEC Mech. Corp., 69 Va. App. 591, 597 (2018) (quoting Stillwell v. Lewis Tree Serv., 47 Va. App. 471, 477 (2006)). However, we review all facts and "'all inferences reasonably deducible [from those facts] in the light most favorable' to [the] employer, since it was the prevailing party below." Mouhssine v. Crystal City Laundry, 62 Va. App. 65, 73 (2013) (quoting Bassett Furn. Indus. v. McReynolds, 216 Va. 897, 899 (1976)). The reviewing court is bound by the Commission's "underlying factual findings if [they] are supported by credible evidence." Norris, 69 Va. App. at 597 (quoting Stillwell, 47 Va. App. at 477). Consistent with this well-established standard, when this Court "determin[es] whether credible evidence exists," it cannot "retry the facts, reweigh the preponderance of the evidence, or make [its] own determination of the credibility of the witnesses." Wilson, 64 Va. App. at 105 (quoting Wagner Enters. v. Brooks, 12 Va. App. 890, 894 (1991)). This highly deferential standard of review for factual findings applies "regardless of whether contrary evidence exists or contrary inferences may be drawn" from the evidence. Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 131 (1999) (*en banc*).

"The phrase arising 'in the course of' refers to the time, place, and circumstances under which the accident occurred." Va. Emp. Comm'n v. Hale, 43 Va. App. 379, 384 (2004) (quoting Cnty. of Chesterfield v. Johnson, 237 Va. 180, 183 (1989)). The "in the course of" element is fairly easily satisfied and is not in dispute in this case. See Bernard, 60 Va. App. at 405 (recognizing that the "in the course of" element is the only one required for compensability under the "positional risk" test); Johnson, 237 Va. at 184-85 (noting that under the "positional risk" test, "simply being injured at work is sufficient" to establish compensability). The "arising 'out of'" component "refers to the origin or cause of the injury." Hale, 43 Va. App. at 384 (quoting Johnson, 237 Va. at 183). Virginia, by also requiring proof that the injury arose "out of" the employment, "follows the 'actual risk' [test]." Bernard, 60 Va. App. at 405 (quoting Taylor v. Mobil Corp., 248 Va. 101, 107 (1994)); see also id. (recognizing that requiring proof only that the injury arose in "the course of" the employment is referred to as positional risk doctrine). "The 'arising out of' prong of the statutory test is 'to be liberally construed to carry out the humane and beneficent purpose of' the Act." O'Donoghue v. United Cont'l Holdings, Inc., 70 Va. App. 95, 103 (2019) (quoting Lucas v. Lucas, 212 Va. 561, 562-63 (1972)). Nevertheless, an appellate court "cannot permit a liberal construction to change the meaning of the statutory language or the purpose of the Act." Am. Furniture Co. v. Doane, 230 Va. 39, 42 (1985), quoted with approval in Jeffreys v. Uninsured Emp.'s Fund, 297 Va. 82, 94 (2019).

Under Virginia's actual risk test, "[a]n injury does not arise out of the employment 'merely because it occurred during the performance of some employment duty if the act performed . . . is not a causative hazard of the employment.'" Haley v. Springs Global U.S., Inc., 54 Va. App. 607, 613 (2009) (quoting Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 340-41 (2007)). "Simple acts of walking, bending, . . . turning," or even climbing stairs, "without [proof of] any other contributing environmental factors, are not risks of employment." Id. (quoting

- 5 -

Nurses, 49 Va. App. at 341); see Johnson, 237 Va. at 186 (holding that the evidence supported the Commission's denial of benefits because "there was nothing unusual about or wrong with the steps" on which the claimant fell and he was "injured by the mere act of turning").

By contrast, "[a] step on a staircase or [one leading] into [the] cab [of a truck] can cause an injury" arising out of the employment if either "that step has some defect" or some other employment-related factor contributes to cause the injury. Haley, 54 Va. App. at 613. For example, the Court upheld the Commission's award of benefits to a prison guard who fell while walking down an ordinary flight of stairs. See Marion Corr. Treatment Ctr. v. Henderson, 20 Va. App. 477, 481 (1995). The record in that case included evidence that "[o]bservation of the guard towers was one of the security functions of [the guard's] employment." Id. at 480. Further, the guard testified that when the accident occurred, he had "just acknowledged" one tower, "was descending the stairs," and had turned his attention to a different tower. Id. Based on the Commission's view of the evidence, it found that the guard's "job responsibilities caused him to watch the tower guards rather than the steps," thereby "increas[ing] his risk of falling on this occasion and directly contribut[ing] to cause his fall and injury." Id. at 479-81. This Court affirmed the Commission's conclusion, based on its underlying findings of fact, that "how [the guard] performed his job provided the 'critical link' between the conditions of the workplace and the injury," thereby satisfying the "aris[ing] out of" prong. Id. at 479-80.

We have also recognized that "even a step that is 'just a little bit higher than usual' *can* constitute a risk of employment." Nurses, 49 Va. App. at 341 (emphasis added) (quoting Reserve Life Ins. Co. v. Hosey, 208 Va. 568, 569 (1968)). For example, in Reserve Life Insurance Co. v. Hosey, the Supreme Court of Virginia affirmed the Commission's award of benefits to a claimant injured while ascending an unfamiliar flight of stairs, which were made of rocks and were just slightly higher than ordinary steps. 208 Va. at 569, 572.

However, simply because unusual steps or particular job duties *can* constitute a risk of employment does not mean that all steps or all job duties do so *as a matter of law*. As this Court has previously noted, in evaluating whether a claim arose "out of" the employment, "to a certain extent each case must stand alone" because "[t]he facts in no two cases are identical." Haley, 54 Va. App. at 614 (quoting Richmond Mem. Hosp. v. Crane, 222 Va. 283, 286 (1981)).

These principles dictate that we affirm the Commission's denial of benefits for the claimant here, just as this Court did in Haley v. Springs Global U.S., Inc., 54 Va. App. at 610-11. In Haley, the employee was climbing the steps to the cab of his employer's truck when his left knee "gave way" with "no direct trauma," and he was later diagnosed with a ruptured tendon. Id. at 611. The evidence established that the first step was "shorter than a regular cab's step[] but higher than . . . a traditional step in a staircase." Id. at 610. The evidence further indicated that the employee "had probably used these steps into his [truck cab] about fifteen times that day with no incident." Id. Finally, the employee did not step "awkward[ly]" or slip, and "he did not believe that 'there [was] anything overly strenuous about stepping up onto the step.'" Id. (second alteration in original). On those facts, the Commission concluded that the employee failed to prove "that his injury 'arose out of' his employment," and it denied his claim for benefits. Id. at 611. On appellate review, this Court held that the Commission did not err in ruling that the employee failed to meet his burden of proof "[g]iven the meager record" and the Commission's factual findings. Id. at 612.

Similarly in the instant case, the record supports the Commission's conclusion that the claimant's injury did not arise *out of* his employment. The injury unquestionably arose *in the course of* the claimant's employment, but the facts in the record surrounding how he exited the van and what work-related factors might have contributed to his injury are virtually nonexistent. The claimant explained that he "g[o]t in the van through the back door," collected the necessary

- 7 -

"stuff," and returned to "the back." He then "set down [his] tray" but "still [had] stuff in [his] hand" as he stepped out of the van. The claimant gave no testimony about the height from which he stepped out of the van and made clear that he "set down [his] tray" before doing so. Although he indicated that he "still [had] stuff in [his] hand" when he "stepped out," he did not elaborate regarding what he was holding or how large or heavy the items were. Nor did he establish that the size or weight of the items might have had a role in causing his injury, such as by throwing him off balance as he left the vehicle or causing him to experience a more significant impact with the ground than usual. In fact, to the contrary, the claimant testified that the manner in which he exited the van was "normal," testimony that he gave on both direct examination and cross-examination. Finally, his testimony about the nature of the repair job itself was that it was "a simple reconnect underneath the kitchen sink," which also does not compel the conclusion that he was carrying heavy tools, parts, or other equipment.

The deputy commissioner, although crediting the claimant as an "entirely reliable" and "credible" witness, outlined the types of evidence that *could* have helped to establish that his injury arose "out of" his employment but were absent from the record. He noted that the claimant did not suggest that he "stepped down from an unusual height" or that some other "environmental condition" or "complicating feature originating with work," such as "uneven pavement, an awkward or confined setting, insufficient light, distraction, [or] required pace," contributed to cause the injury. The deputy commissioner pointed to the absence of evidence that the claimant's act of holding his "tools and supplies[] as he moved . . . contributed to the 'twinge'" in his left knee. He specifically noted that the claimant "did not describe the materials." He also observed that the claimant "did not suggest they were heavy [and] add[ed] to his exertion" or that they were "cumbersome [and] increase[ed his] risk of a[] . . . misstep." The deputy commissioner further pointed out that the claimant "characterized" his action in "stepping

- 8 -

down from the van's rear door as simply 'normal.'" Based on the record before him, the deputy commissioner concluded that the claimant failed to meet his evidentiary burden.

On review, the Commission recognized its authority to draw reasonable inferences from the evidence, and it too concluded that the record was insufficient to permit it to infer that "any work-related risk or significant work-related exertion" caused the injury. The Commission explicitly rejected what it characterized as the claimant's invitation to "*imagine*[] a person with tools in one hand and plumbing materials in the other, maneuvering out of the back of a work van by stepping down from an elevated height[,]' thus[] creating a risk of the employment." (Emphasis added).

Based on the record before us, we hold that the Commission did not err in refusing to draw speculative inferences from the evidence and concluding that the claimant failed to meet his burden of proof. See Wiggers, 230 Va. at 159 (holding that a claimant does not meet his burden of proving an injury arose "out of" his employment through "mere[] . . . conjecture or speculation"). As explained in detail by the deputy commissioner, the record does not indicate the height of the step required to exit the van or what the claimant was carrying, and the claimant testified that his exit was "normal." In light of the sparse record and the degree of deference owed to the Commission's factual findings, we conclude that the Commission did not err by ruling that the claimant failed to prove that his injury arose out of his employment. Compare Haley, 54 Va. App. at 610-12 (affirming the *denial* of benefits because evidence that the employee did not slip or do "anything overly strenuous" while climbing stairs to his truck cab supported the Commission's finding that he failed to meet his burden of proof), with Nurses, 49 Va. App. at 339-40, 342-44 (affirming the *award* of benefits because the employee's detailed testimony and photos supported the Commission's ruling that her fall on an unfamiliar, poorly marked wheelchair ramp arose out of her employment).

## III.  CONCLUSION

Based on the record and the applicable law, we hold that the evidence supports the Commission's ruling that the claimant did not prove that his knee injury arose out of his employment.  Consequently, we affirm the denial of benefits.

<u>Affirmed.</u>